IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Monster Concrete and Excavation, Inc., | ) | CASE NO.: 18-80279-CRJ11 |
| EIN: XX-XXX8547 | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

## DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN
## OF REORGANIZATION DATED JUNE 21, 2019

In accordance with 11 U.S.C. § 1127, Monster Concrete and Excavation, Inc., Debtor and

Debtor-in-possession ("Debtor") in the above-captioned Chapter 11 case files this Third Amended

Chapter 11 Plan of Reorganization Dated June 21, 2019 ("Plan"), in the United States Bankruptcy

Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

## I.

## DEFINITIONS

The following terms shall have the following meanings unless the context otherwise

requires and, unless otherwise indicated, the singular shall include the plural. The definitions

contained in §§ 101 and 1101 of the Bankruptcy Code shall control unless different definitions are

stated herein, in which case the definitions as stated herein shall control for purposes of this Plan.

1.01 **"Accounting Fees"** means accounting and/or administrative management fees for

preparing tax returns and other financial reports.

1.02 **"Administrative Expense Claim"** means a Claim for any cost or expense of

administration of the Reorganization Case allowed under § 503(b) of the Bankruptcy Code,

including without limitation any Claim for the actual and necessary costs and expenses of

preserving the Debtor's estate and all allowances of compensation or reimbursement of

expenses to the extent allowed by the Bankruptcy Court.

**1.03** **"<u>Administrative Expense Claims Bar Date</u>"** means the date set by the Bankruptcy Court as the last day for filing all requests for payment of Administrative Expense Claims.

**1.04** **"<u>Allowed Amount</u>"** means the amount of any Allowed Claim.

**1.05** **"<u>Allowed Claim</u>"** means:

(A) Any Claim in any Class:

      (i)    proof of which has been filed with the Bankruptcy Court prior to the Bar Date, or which has been scheduled by the Debtor and not shown as disputed, contingent, or unliquidated; and

      (ii)    to which no objection has been made within the Disclosure Statement or to which no objection is filed no later than thirty (30) days after the Effective Date or which has been allowed by Final Order; or

(B)    Any Administrative Claim for which a motion or fee application has been filed and approved by the Court.

**1.06** **"<u>Allowed Secured Claim</u>"** means a Claim that is both an Allowed Claim and a Secured Claim.

**1.07** **"<u>Allowed Unsecured Claim</u>"** means a Claim that is both an Allowed Claim and an Unsecured Claim.

**1.08** **"<u>Bankruptcy Code or Code</u>"** means Chapter 11 of Title 11, United States Code.

**1.09** **"<u>Bankruptcy Court</u>"** or **"<u>Court</u>"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.10** **"<u>Bankruptcy Rule</u>"** or **"<u>Bankruptcy Rules</u>"** means one or more of the Federal Rules of

Bankruptcy Procedure.

**1.11** **"Bar Date"** means the date established by the Court as the deadline for filing all Claims. The Court scheduled May 7, 2018, as the Bar Date for all claimants to file proofs of claim, including governmental units and/or agencies. Claims filed after the Bar Date, which are not otherwise Allowed Claims, will be disallowed and of no effect.

**1.12** **"Claim"** means a claim or interest as defined by the Code.

**1.13** **Intentionally Omitted**.

**1.14** **"Class"** means one of the classes of Allowed Claims or equity interests established by the Plan.

**1.15** **"Confirmation Date"** means the date on which the Court pursuant to § 1129 of the Bankruptcy Code enters the Confirmation Order.

**1.16** **"Confirmation Order"** means the Final Non-Appealable Order of the Court determining that the Plan meets the requirements of the Bankruptcy Code and is entitled to confirmation.

**1.17** **"Court"** means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.18** **"Debtor"** means Monster Concrete and Excavation, Inc.

**1.19** **"Effective Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.20** **"Filing Date"** with respect to the Debtor means February 1, 2018, the date on which the Reorganization Case was commenced by the Debtor filing for relief under Chapter 11 of the Bankruptcy Code.

**1.21** **"Final Decree"** means the Order entered by the Bankruptcy Court which closes the case.

**1.22** **"<u>Final Order</u>"** means:

    A.    An order of the Court that has become conclusive of all matters adjudicated by such order and:

        (i)    that is not the subject of a pending appeal and for which the time to appeal or seek review or rehearing of such order has expired, or

        (ii)    that is the subject of a pending appeal but has not been stayed or as to which no supersede as bond has been posted.

**1.23** **"<u>IRS</u>"** means the Internal Revenue Service.

**1.24** **"<u>Plan</u>"** means this Plan of Reorganization and any subsequent amendments.

**1.25** **"<u>Post-Petition</u>"** means the Filing Date and the period after the Filing Date.

**1.26** **"<u>Pre-Petition</u>"** means the period preceding the Filing Date.

**1.27** **"<u>Priority Claim</u>"** means those expenses and claims which may be provided for under 11 U.S.C. § 507 of the Code.

**1.28** **"<u>Proponent</u>"** means Debtor.

**1.29** **"<u>Pro-rata Share</u>"** means the same proportions that a given Allowed Claim within a Class bears to the total Allowed Claim of such Class.

**1.30** **"<u>Reorganization Case</u>"** with respect to the Debtor means the reorganization case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on or about February 1, 2018, and pending in the Bankruptcy Court under Case No. 18-80279-CRJ11.

**1.31** **"<u>Secured Claim</u>"** means a Claim allowed as secured in the real or personal property of Debtor.

**1.32** **"Unsecured Claim"** means an allowed Claim other than an Administrative Expense Claim, Priority Claim, or a Secured Claim.

## II.

## CLASSES AND CLASSIFICATIONS OF CLAIMS AND INTEREST

**1.0** **Secured Claims:**

**1.01** **Alabama Department of Revenue**: This Class consists of the Secured Claim of Alabama Department of Revenue.

**1.02** **Caterpillar Financial Services**: This Class consists of the Allowed Secured Claim of Caterpillar Financial Services.

**1**.03 **Mack Financial Services:** This Class consists of the Secured Claim of Mack Financial Services.

**1.04** **Bravo Capital:** This Class consists of the Allowed Secured Claim of Bravo Capital Financial Services

**1**.05 **North Mill Credit Trust**. This Class consists of the Allowed Secured Claim of North Mill Credit Trust which debt is owed by Monster Concrete LLC and which is proposed to be substantively consolidated with this case.

1.06 **Internal Revenue Service**. This Class consists of the Allowed Secured Claim of Internal Revenue Service which debt is owed by Monster Concrete LLC and which is proposed to be substantively consolidated with this case.

**2.0** **Non-Priority General Unsecured Claims.**: This Class consists of all Allowed Unsecured Claims.

**3.0** **Equity Interest Holder**: This Class consists of the equity shareholder of the Debtor which

consists of Mr. Steve Williams who owns one hundred percent (100%) of the issued and outstanding stock in the Debtor.

## III.

## IMPAIRMENT AND TREATMENT OF CLAIMS UNDER THE PLAN

The Plan will be summarized by incorporation of pertinent portions. Other provisions of the Plan are extremely important, especially Article I, Definitions. The Plan should be read in full.

**1.0** **Secured Claims:**

**1.01** **Alabama Department of Revenue**: This Class consists of the Allowed Secured Claim of Alabama Department of Revenue ("ADOR") in the approximate amount of $7,519.00 and is impaired. ADOR is secured by a tax lien on the Debtor's equipment, inventory and accounts receivables pursuant to a tax lien. Debtor will pay, settle and satisfy this debt by making monthly payments to ADOR in the amount of $166.43 per month for Forty-Eight months commencing on the Effective Date of the Plan and continuing each month thereafter until the Debt is paid in full. This claim includes interest at 3% per annum. This creditor will retain its lien upon this collateral until such time as the debt is paid in full.

**1.02** **Caterpillar Financial Services**: This Class consists of the Allowed Secured Claim of Caterpillar Financial Services in the approximate amount of $30,054.34 and is impaired. The Claim of Caterpillar is secured by a lien on a 320CL Hydraulic Excavator & Bucket. On May 29, 2018 this Court approved payment of the adequate protection payments by the Debtor's to Caterpillar in the amount $1,851.03 per month beginning in April, 2018 [Doc. 80]. This payment includes

interest at the contract rate of 8.95 percent. Debtor will continue to pay this debt pursuant to the terms of this Court's prior order until the debt is paid in full. Debtor estimates that the payment period is approximately 16 months.

**1.03** **Mack Financial Services**: This Class consists of the Allowed Secured Claim of Mack Financial Services in the approximate amount of $18,414.55 and is impaired. The Claim of Mack is secured by a lien on a 2011 Mack Truck. The Debtor will pay, settle and satisfy this debt by making monthly payments to Mack in the amount of $426.15 per month. This payment includes interest at the contract rate of 5.25 percent. Debtor will continue to pay This debt pursuant to the terms of This Court's prior order until the debt is paid in full. Debtor estimates that the payment period is approximately 16 months.

**1.04** **Bravo Capital:** This Class consists of the Allowed Secured Claim of Bravo Capital Financial Services in the approximate amount of $88,444.65 and is impaired. The Claim of Caterpillar is secured by a lien on a 2012 John Deer 605C and a 2005 Mack CV713 Truck. On April 26, 2018 this Court approved payment of the adequate protection payments by the Debtor to Bravo $10,094.76 beginning in April, 2018 [Doc. 66]. This payment includes interest at the contract rate. Debtor will continue to pay This debt pursuant to the terms of This Court's prior order until the debt is paid in full. Debtor estimates that the payment period is approximately 10 months.

 Assuming that the case of Monster Concrete is substantively consolidated with the case of Monster Concrete and Excavation the following additional secured claims

would be satisfied as follows:

1.05     **North Mill Credit Trust f/k/a EFS Credit Trust**:  This Class consists of the claim of North Mill Credit Trust f/k/a EFS Credit Trust (hereinafter "EFS") in the approximate amount of $41,067.62 and is impaired.  The Claim of EFS is secured by a lien on a 2017 Rampant low boy 35 ton trailer which is owned by the Debtor but used by Monster Concrete and Excavation in its operations.  The Debtor proposes that this claim be paid by Monster Concrete and Excavation, pursuant to its plan, in monthly payments of $779.71 per month for 60 months with interest at 5.25%, per annum until the debt is paid in full.  EFS shall retain its lien on this collateral until the debt is paid in full.

1.06     **Internal Revenue Service**:[1]  This Class consists of the Allowed Secured Claim of the IRS.  The IRS has filed a secured claim in the approximate sum of $467,808.65 in the Monster Concrete LLC case.  The Debtor proposes that this claim be paid by Monster Concrete and Excavation, pursuant to its plan of reorganization.  That plan proposes that MCE will pay, settle and satisfy this claim over a period of ninety-two (92) months at the Internal Revenue Code interest rate of 4.00%. The Debtor shall remit sixty (60) monthly payments in the sum of $4,736.34 and thirty-two (32) payments in the sum of $8,486.44 to the IRS. The first monthly installment shall be due on or before August 1, 2019 and subsequent installments shall be due on the 1st day of each month thereafter until said debt has been paid in full.  The Debtor

---

1 Debtor's classification of these secured tax claims is in accordance with the Bankruptcy Code.  See eg. *In re Tree of Life Church*, 522 B.R. 849, 861 (Bankr. D.S.C. 2015); *In re Greenwood Point, LP,* 445 B.R. 885, 905 (Bankr. S.D. Ind. 2011).

reserves the right to prepay the portion of the IRS secured claim during the referenced payment period.

The IRS shall retain its tax liens which were filed pre-petition and shall not be required to release said tax liens until the secured and general unsecured amounts of its claim have been paid in full per the terms of the confirmed plan.

For the tax periods listed on the amended claim filed by the IRS, the time periods found at 26 U.S.C. §§ 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan.

For the tax periods listed on the amended claim, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment stated in this plan.

The IRS tax debt for the tax periods listed on the amended IRS claim shall not be the subject of any discharge entered in this case until the Debtor has complied with the terms of the repayment of the IRS debt as set for herein.

The IRS reserves the right to adjust the amount of its claim if it determined through the IRS administrative process that the amounts due on any tax period listed on the IRS claim are due to be adjusted.

**2.0** **Non-priority Unsecured Claims**: This class consists of all allowed general unsecured claims which are impaired and includes those of Monster Concrete. The total amount of unsecured claims exceeds $547,000. The claims are of every kind and nature including claims arising from personal guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims and damages arising from or related to any liquidated or contingent claim. It also

includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court. Holders of general unsecured claims without priority which are Allowed Claims as determined on or before the Effective Date of the Plan shall be paid on a pro rata distribution. Payment to the creditors in this class shall be made from the Debtors future net income. Debtor reasonably believes that creditors in this class will receive a distribution equal to no less than fifty percent of their Allowed Claim. Allowed Claims in this class shall receive monthly payments starting on the Effective Date of the Plan over a period of sixty consecutive months

3.0 **Equity Interest Holder**: This Class consists of the equity shareholder of the Debtor Mr. Steve Williams. Mr. Williams owns 100% of the issued and outstanding stock in Debtor. The claim of the equity interest holder is impaired. Mr. Williams' will retain his equity interest in the Debtor, but he shall not, however, receive a distribution based on his Claim under the Plan until allowed administrative, priority and unsecured claimants have been paid or otherwise satisfied as provided for herein.

**TREATMENT OF UCLASSIFIED ADMINISTRATIVE
EXPENSES AND PRIORITY TAX CLAIMS**

**Administrative Expense Claims:**

1.01 **Heard, Ary & Dauro, LLC:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan unless otherwise agreed upon by the parties.

1.02 **Davis, Redding & Associates, LLC:** This Administrative Expense Claim is unimpaired and shall be paid in full as of the Effective Date of the Plan.

**Priority claims:**

**2.01** **Alabama Department of Revenue**: This Class consists of the Allowed Priority Claims of the Alabama Department of Revenue under §507(a)(8) of the Bankruptcy Code. Pre-petition the Debtor owed ADOR the sum of $23,072.01 for withholding taxes. This amount shall be payable in sixty (60) monthly payments by the Debtor remitting to ADOR equal monthly payments in the sum of $424.91 which payment includes interest at 4%. The first payment shall be due on the effective date of the Plan and subsequent payments shall be due on the 1st day of each monthly thereafter until said debt has been paid in full.

**2.02** **Internal Revenue Service:** The amended claim for pre-petition tax debt filed by the IRS on June 3, 2019 in the sum of $295,560.07 shall be allowed as filed.

The unsecured priority portion of the claim in the sum of $220,869.65 shall be amortized over a period of sixty (60) months at the Internal Revenue Code interest rate 4.00%. The Debtor shall remit monthly payments in the sum of $4,067.65 to the IRS. The first monthly installment shall be due on or before August 1, 2019 and subsequent installments shall be due on the 1st day of each month thereafter until said debt has been paid in full.

The unsecured general portion of the claim in the sum of $74,690.42 shall be paid per the terms contained in Part III, paragraph 2.0 of the plan.

The Debtor shall pay in full any liability, including tax, interest and penalty, for the post-petition Form 941 tax periods ended June 30, 2018, September 30, 2018 and December 30, 2018 by October 15, 2019 by remitting the following payments to the IRS:

|  |  |
|---|---|
| August 1, 2019 | Minimum of $15,000.00 |
| September 1, 2019 | Minimum of $15,000.00 |

October 1, 2019                    Unpaid balance of tax debt including
                                  applicable tax, interest and penalty.

In the event the Debtor fails to remit any monthly payment on the IRS unsecured

priority and general unsecured claim as each payment becomes due or pay in full the debt

due for the Form 941 tax periods ended June 30, 2018, September 30, 2018 and

December 30, 2018 by October 15, 2019 as set forth herein, the automatic stay will

be considered terminated and the IRS may proceed with its legal and/or administrative

remedies to collect any and all sums due on its amended claim.

The Debtor shall timely file all post-petition federal Form 941 tax returns

beginning with the Form 941 for the tax period ended March 31, 2019 and the Form 940

tax return for the tax period ended December 31, 2019 by the due date for each respective

tax period. Upon the filing of the applicable Form 941 and Form 940 tax returns,

beginning with the Form 941 for the tax period ended March 31, 2019 and the Form 940

tax return for the tax period ended December 31, 2019, to the extent there is a balance

due the IRS, the Debtor shall remit the balance due at the time the return is filed with the

IRS.

During the pendency of the repayment period for the pre-petition tax debt owed

to the IRS, in the event the Debtor fails to timely file any and all post-petition federal

Form 941 tax returns beginning with the Form 941 for the tax period ended March 31,

2019 and the Form 940 tax return beginning with the tax period December 31, 2019

and remit any balance due the IRS; the automatic stay will be considered terminated

and the IRS may proceed with its legal and/or administrative remedies to collect any

and all sums due on its amended claim and any post-petition liability.

For the tax periods listed on the claim filed by the IRS, the time periods found at 26 U.S.C. §§ 6503(b) and 6503(h) are tolled during the term for repayment stated in this plan. The IRS tax debt for the tax periods listed on the IRS claim shall not be the subject of any discharge entered in this case until the Debtor has complied with the terms of the repayment of the terms of the secured, unsecured priority and general unsecured debt of the IRS debt as set for herein.

For the tax periods listed on the amended claim, the time periods found at 11 U.S.C. § 507(a)(8) are tolled during the term for repayment stated in this plan. The IRS reserves the right to adjust the amount of its claim if it determined through the IRS administrative process that the amounts due on any tax period listed on the IRS claim are due to be adjusted.

## IV.

## PROVISIONS FOR REJECTION AND ASSUMPTION OF EXECUTORY CONTRACTS

Debtor is not aware of any additional executory contracts or unexpired leases to which it is a party. To the extent such exists it is to be rejected upon confirmation. All parties to any executory contract or lease rejected shall have thirty (30) days from the Confirmation Date in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be eligible to participate in distributions under this Plan.

## V.

## MEANS OF EXECUTION OF THE PLAN

### 5.01 Means of Implementation of the Plan/ SUBSTANTIVE CONSOLIDATION

As part of the implementation of its Plan, the Debtor intends on substantively consolidating

its case with that of Monster Concrete LLC, Case No. 18-80280 upon confirmation of this Plan.

Substantive consolidation involves the pooling of the assets and liabilities of two or more related

entities; the liabilities of the entities involved are then satisfied from the common pool of assets

created by consolidation. *Eastgroup Properties v. S. Motel Ass'n*, Ltd., 935 F.2d 245, 248 (11th

Cir. 1991). Substantive Consolidation is appropriate where there is substantial identity between

the entities to be consolidated and consolidation is necessary to avoid some harm or to realize

some benefit.

Debtor submits that substantive consolidation is appropriate in this case. As noted above,

both companies are owned by the same individual. While Monster Concrete and Excavation's

scope of work included excavation, the companies essentially did the same type of work for their

customers. Also, both companies utilized the same employees and operated out of the same

physical location.

All business currently being done by the two companies, is being done through Monster

Concrete and Excavation. Furthermore, many of the assets owned by Monster Concrete were used

by Monster Concrete and Excavation in its ordinary course of business. There is no written lease

or other agreement between the two companies regarding the compensation for the use of this

equipment. Monster Concrete and Excavation paid the creditors who had liens on the equipment

owed by Monster Concrete in exchange for the use of the equipment. Also, the two companies

share many of the same creditors namely the Internal Revenue Service. There would also be cost

savings by avoiding duplication by consolidation and consolidation will recognize that which has

been intended; that the two companies really are just one.

Absent substantive consolidation the unsecured creditors of Monster Concrete will be paid

little if any portion of their claim. Moreover, the creditors of Monster Concrete and Excavation will not be prejudiced by substantive consolidation. In fact, they actually benefit by Monster Concrete and Excavation using equipment belonging to Monster Concrete and thereby avoiding having to spend additional monies to purchase new equipment. These savings can then be used to as part of the plan payments to the creditors of both Monster Concrete and Monster Concrete and Excavation.

A further reason for allowing substantive consolidation of the two entities is because Monster Concrete and Excavation is likely the successor to Monster Concrete. Although there are no actual merger or acquisition agreements formally merging the two entities, Alabama law recognizes that a successor entity may become liable the debts of another if four factors are present. They are: 1) a basic continuity of the enterprise including, a retention of key personnel, assets, general business operations and the Sellers name; 2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation; 3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation; and 4) the purchasing corporation held itself out to the world as the effective continuation of the seller corporation. *Prattville Mem'l Chapel v. Parker*, 10 So. 3d 546, 556 (Ala. 2008).

All of these factors are present in this case to a certain degree. Certainly, there was a continuity of the enterprise with the retention of key personnel, business operations and location. Also, the prior entity Monster Concrete ceased operations and Monster Concrete and Excavation began paying the debts of Monster Concrete when using its assets. Additionally, Monster Concrete

and Excavation held itself out as the continuation of Monster Concrete. Thus, there are grounds to find, separate and apart from the request for substantial consolidation, that Monster Concrete and Excavation is the mere continuation of Monster Concrete and therefore responsible for its debts. Furthermore, Alabama law also supports the substantive consolidation of the two cases. Section 10A-2-11.03 of the Alabama Code allows for a merger of companies which is adopted by the board of directors and approved by their respective shareholders.

The Debtor, by continuing to operate its business, has increased the likelihood of the success of the Plan. Debtor will implement the terms of the Plan by making payments to creditors from Debtor's post-petition income. By restructuring its debt the Debtor has increased the likelihood of the success of the Plan. The Debtor's operating statements filed with this Court support the Debtor's ability to make the plan payments and therefore the plan is feasible. Debtor shall also execute such additional documents as are necessary to comply with the terms of the Plan.

**5.02** **Execution of All Documents**. The Plan authorizes the Debtor to execute all documents necessary to carry out the terms of the Plan.

**5.03** **Objections to Claims and Allowance**. No payment or distribution shall be made to the holder of a Claim against which an objection has been filed within thirty (30) days of the Effective Date until any such objection to a Claim has been determined by Final Order of the Court. Disputed and unliquidated Claims shall be estimated for purposes of voting and unless the Court orders otherwise, payments to holders of contested claims that are subsequently allowed shall be made in accordance with the terms of the Plan. Contest of Claims shall be filed with the Court no later than sixty (60) days after the Effective Date.

**5.04** **Amendments to Claims and Requests for Payment of Administrative Expense**

**Claims; Claims Filed After the Bar Dates**. Unless otherwise provided in a Final Order of the Bankruptcy Court:

(a)     after the Bar Date, a Claim on account of which a Proof of Claim is not timely filed in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or an Order of the Bankruptcy Court, may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount or priority;

(b)     except as otherwise provided herein, after the Administrative Expense Claims Bar Date, a Claim on account of which a request for payment of Administrative Expense Claim is not timely filed may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount or priority; and

(c)     Except as otherwise provided in the Plan, any new or amended Claim filed after the Bar Date or the Administrative Expense Claims Bar Date (as applicable) shall be deemed Disallowed in full and expunged without any action by the Plan Proponent, unless the holder of such Claim has obtained prior Bankruptcy Court authorization for the filing. The holder of a Claim which is disallowed pursuant to this Section 5.04 shall not receive any distribution on account of such Claim.  The Plan Proponent shall file with the Bankruptcy Court and serve on the holder of any Claim whose Claim is deemed Disallowed pursuant to this Section 5.04, but whose Proof of Claim or request for payment of an Administrative Expense Claim is subsequently deemed timely filed or Allowed notwithstanding this Section 5.04 by a Final Order of the Bankruptcy Court, any Objection to such Claim or request for estimation thereof within sixty (60) days (or such later date

as the Bankruptcy Court shall approve) after any such order becomes a Final Order.

       **5.05**   **Retention of Assets**.  Except as provided for in the Plan, or in the order confirming the Plan, on the Confirmation Date, the Debtor shall be vested with all of the property of the estate, and the Debtor shall retain all property rights free and clear of all liens, charges, and other interests of the creditors.

**VI**.

**MODIFICATION AND CONFIRMATION OF THE PLAN**

       **6.01**   **Pre-Confirmation Modifications**.  Debtor may propose modifications hereof at any time prior to Confirmation without leave of this Court, upon such notice as may be required by this Court.  If such modification is made after acceptance hereof, this Plan as so modified shall be deemed accepted by all holders of Claims and Equity Interests that have previously accepted this plan, provided that this Court finds that such modification would not materially and adversely change the treatment of the holders of Claims or Equity Interests that have not accepted such modification in writing.

       **6.02**   **Post-Confirmation Modifications**.

       (a)     Except as provided in Subsection (b) of this section, Debtor may modify this Plan after Confirmation only if this Court determines that this Plan as so modified meets all of the requirements for confirmation.

       (b)     Notwithstanding Subsection (a) of this section, the Debtor may modify this Plan during the period between the Confirmation Date and the "substantial consummation," provided that this Court determines only that such modification does not materially and adversely change the treatment of Claims or Equity Interests but merely remedies a defect or omission or reconciles

an inconsistency in or between this Plan and/or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect hereof.

### 6.03 **Effect of Confirmation.**

(a)     Upon Confirmation, the provisions hereof shall bind the Debtor and each holder of a Claim whether or not (1) the Claim of such holder is impaired hereunder, or (2) such holder has accepted this plan.

(b)     Except as otherwise provided herein or in the Confirmation Order, Confirmation vests all of the property of the estate in Debtor, free and clear of all Claims.

(c)     Except as provided for in § 1141(d)(5), Confirmation discharges the Debtor from any debt that arose before the Confirmation Date and any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim is filed with respect thereto, (2) the debt appears in the schedules of liabilities filed by the Debtor, (3) the debt is allowed, or (4) the holder of such debt has accepted this Plan.

(d)     Confirmation shall constitute approval or ratification by this Court of the assumption or rejection of the Debtor's executory contracts and unexpired leases pursuant to Section IV hereof.

(e)     Confirmation shall constitute approval by this Court of all financing arrangements, leases, contracts, and other actions that the Debtor proposes in the Disclosure Statement or herein, to enter into, make, or take in connection with implementation hereof, including the execution of any documents as of the Effective Date.

# VII

## **DISCHARGE**

Except as otherwise provided in the Plan or in the Confirmation Order, confirmation creates a discharge effective as of the date of entry of the Confirmation Order, of any and all debts of the Debtor that arose at any time before the Confirmation, including but not limited to, all principal and interest, whether accrued before or after the Filing Date, pursuant to § 1141 (d) (1) and 506 (d) of the Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is an allowed claim, or whether the holder thereof votes to accept the Plan. The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever. All creditors shall be precluded from asserting against the Debtor or its assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the Confirmation Date.

# VIII

## **RETENTION, ENFORCEMENT AND WAIVER OF CLAIMS**

**8.1** Pursuant to § 1123(b) (3) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor except claims waived, relinquished, or released in accordance with the Plan.

**8.2** No party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547(b) of the Code after the Confirmation Order is entered.

**8.3** Contests of Claims shall be filed with the Court not later than thirty (30) days after the Effective Date.

# IX.

## JURISDICTION OF THE COURT

**9.01** **Continuing Jurisdiction**. The Court shall retain and have exclusive jurisdiction over the Reorganization Case for the following purposes:

(a)   To determine any and all objections to the allowance of Claims or Interests;

(b)   To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c)   To determine any applications or motions pending on the Effective Date for the rejection, assumption, or assumption and assignment of any executory contract and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(d)   To determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(e)   To consider any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Court, to the extent authorized by the Court;

(f)   To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or that may involve or affect the value of assets of the Company administered by the Plan;

(g)   To consider and act on the compromise and settlement of any Claim against or cause of action by or against the Debtor arising under or in connection with the

Plan;

(h)     To issue such orders in aid of execution of the Plan to the extent authorized by §
1142 of the Bankruptcy Code;

(i)     To enforce the workout agreement;

(j)     To determine such other matters as may be set forth in any order or orders
confirming the Plan or which may arise in connection with the Plan or any other
Order or Orders confirming the Plan.

## X.

## <u>MISCELLANEOUS PROVISIONS</u>

**10.1     <u>Prior Court Orders.</u>**  All prior orders entered by the United States Bankruptcy
Court for the Northern District of Alabama are hereby incorporated by reference, including their
terms, conditions, benefits, requirements and obligations.

**10.01     <u>Cramdown.</u>**   With respect to any class not accepting the Plan, the Proponent does
hereby request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code on the
grounds that the Plan does not discriminate unfairly and is fair and equitable with respect to each
class of claims that are impaired.

**10.2     <u>Quarterly Fees.</u>**  The Debtor will be making its quarterly fees to the Bankruptcy
Administrator pursuant to 28 U.S.C. § 1930.  Debtor will continue to make these payments as
required post-petition.

**10.3     <u>Compliance with Tax Requirements.</u>**  In connection with the Plan, the Debtor
will comply with all withholding and reporting requirements imposed by federal, state and local
taxing authorities, and all distributions hereunder shall be subject to such withholding and

reporting requirements.

**10.4** **Retention of Liens.** Each creditor whose claim is secured by a lien or mortgage on property of the Debtor shall retain such lien or mortgage until such creditor's claim is paid in full according to the treatment proposed under the Plan at which time the lien shall be released.

**10.5** **Employment and Payment of Professionals**.

(a)     During the period between the Confirmation Date and the Effective Date, Debtor may (1) continue to avail itself of the services of professional persons whose employment was approved at or prior to Confirmation in completing the administration of this case and in the consummation and performance hereof, and (2) if necessary and with the approval of this Court, employ additional professional persons to render such services.

(b)     With respect to services rendered and expenses incurred in or in connection with this case during such period by any such professional person, the professional person may render periodic billings therefore to the Debtor and the Debtor shall promptly pay the same, but each such payment shall be subject to review and approval by this Court as to the reasonableness thereof in the manner prescribed by Subsection (a) of this section.

**10.6** **Notice of Hearing and Motions Post Confirmation.** Upon confirmation of the Plan, all of the motions, and applications for compensation to professionals, and notices of such hearings shall be limited to the Debtor, Bankruptcy Administrator and any party of interest directly affected by such motion or application.

**10.7** **Satisfaction of Claims.** The rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Allowed Claims, liens and encumbrances of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the

Debtor or any of its assets; and, except as otherwise provided herein, on Confirmation, all such Allowed Claims against the Debtor or its assets, any other or further Allowed Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation are satisfied, discharged and released.

## XI.

## CLOSING OF CASE

**11.01  Procedure for Closing Case**.  If the Court concludes that a hearing on such motion would be appropriate, such hearing shall be conducted upon notice only to the Debtor, the Bankruptcy Estate Administrator, and persons specially requesting notices at the hearing on confirmation.

Respectfully submitted on this 21st day of June 2019.

By: *Steve Williams* _____
    Monster Concrete and Excavation, Inc.


*/s/ Kevin D. Heard* _____
Kevin D. Heard
Attorney for Debtor

HEARD, ARY & DAURO, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, Alabama 35801
Phone:  (256) 535-0817
Fax:  (256) 535-0818
kheard@heardlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21ˢᵗ day of June 2019, I served a copy of the foregoing **Debtor's Third Amended Chapter 11 Plan of Reorganization Dated June 21, 2019,** on the parties listed below and on the attached matrix by depositing the same in the United States Mail, postage prepaid and properly addressed, via electronic mail at the e-mail address below, unless the party being served is a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, service has been made by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice will be electronically mailed to:**

Lee R Benton lbenton@bcattys.com, kmartin@bacattys.com

Richard Blythe Richard_Blythe@alnba.uscourts.gov; courtmailann@alnba.uscourts.gov

Richard E. O'Neal USAALN.BANKRUPTCY@usdoj.gov

Matthew M Cahill mcahill@bakerdonelson.com, mcleveland@bakerdonelson.com , dbivins@bakerdonelson.com

Derek F Meek dmeek@burr.com, mgunnells@burr.com

**Notice will not be electronically mailed to:**

**A**ll **parties on the attached matrix were served via U.S. Mail.**

*/s/ Kevin D. Heard* _____
Kevin D. Heard

Label Matrix for local noticing
1126-8
Case 18-80279-CRJ11
NORTHERN DISTRICT OF ALABAMA
Decatur
Fri Jun 21 14:25:04 CDT 2019

**ALA DEPT OF REVENUE LEGAL DIV
P.O. Box 320001
Montgomery, AL 36132-0001

**Assured Partners, LLC
4500 Town Center Blvd. Suite 200
Jeffersonville, IN 47130-7149

**Auto Owners Insurance
Attn: Bankruptcy Dept.
6101 Anacapri Blvd
Lansing, MI 48917-3994

**Caterpillar Financial Services
2120 West End Avenue
Nashville, TN 37203-5341

(p)HERC RENTALS INC
ATTN BANKRUPTCY
27500 RIVERVIEW CENTER BLVD 2ND FLOOR
BONITA SPRINGS FL 34134-4328

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

**Labor Finders
11426 North Jog Rd.
Palm Beach Gardens, FL 33418-1762

**Nikhat Shahazad
c/o Charles Ray, P.C.
200 West Side Square, Ste. 50
Huntsville, AL 35801-4816

**State of Alabama
Dept of Revenue
PO Box 320001
Montgomery, AL 36132-0001

**Sunbelt
2341 Deerfield Dr.
Westville, SC 29175

ALABAMA CONCRETE INC.
4200
HUNTSVILLE, AL 35806

Alabama Department of Labor
649 Monroe St.
Montgomery,AL 36131-0099

Assured Partners
2305 River Rd
Louisville, KY 40206-1010

Assured Partners, LLC.
2229 Rocky Ridge Rd.
Birmingham, AL 35216-4479

AssuredPartners
2305 River Road
Louisville, KY 40206-1010

Lee R. Benton
Benton & Centeno, LLP
2019 Third Avenue North
Birmingham, AL 35203-3301

Richard Blythe
BA Decatur
P O Box 3045
Decatur, AL 35602-3045

Richard M Blythe
United States Bankruptcy Administrator
PO Box 3045
Decatur, AL 35602-3045

Briar Patch, LLC
c/o Lee R. Benton
Benton & Centeno, LLP
2019 3rd Avenue North
Birmingham, AL 35203-3301

Buffalo Rock Company
c/o Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203-5210

Matthew M Cahill
Baker, Donelson, Bearman, Caldwell & Ber
420 20th Street North
Suite 1600
Birmingham, AL 35203-5202

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Cardinal Equity
30 Wall Street
New York, NY 10005-2201

Caterpillar Financial Services Corporation
Baker Donelson, PC
c/o Matthew M. Cahill
420 20th Street North
Suite 1400
Birmingham, AL 35203-3221

Gibralter Capital Advance
400 Skikie Blvd. Ste 375
Northbrook, IL 60062-7928

Kevin D. Heard
Heard, Ary & Dauro, LLC
303 Williams Avenue SW
Park Plaza Suite 921
Huntsville, AL 35801-6012

Insolvency Section Internal Revenue Service
801 Broadway
MDP 146, Room 285
Nashville, TN 37203-3816

Littlebit Properties, LLC
c/o Lee R. Benton
Benton & Centeno, LLP
2019 3rd Avenue North
Birmingham, AL 35203-3301

Mack Financial Services
P.O. Box 26131
Greensboro, NC 27402-6131

Derek F Meek
Burr & Forman LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203-3284

Michael LeBlanc
6063 Morganton Road
Greenback, TN 37742-3535

Monster Concrete and Excavation, Inc
4507 Triana Blvd
Huntsville, AL 35805-5707

Monster Concrete and Excavation, inc.
6063 Morganton Road
Greenback, TN 37742-3535

Nihkat Shahzad
Charles Ray, PC
200 West Side Square
Suite 50
Huntsville, AL 35801-4816

Richard E. O'Neal
Assistant U.S. Attorney
1801 4th Avenue North
Birmingham, AL 35203-2101

Raven Crane and Equipment Co.
196 Quigley Blvd. Ste. B
New Castle, DE 19720-4176

(p)SPRINT NEXTEL CORRESPONDENCE
ATTN BANKRUPTCY DEPT
PO BOX 7949
OVERLAND PARK KS 66207-0949

Steering Committee
c/o Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036-6745

Steve Williams
4507 Triana Blvd
Huntsville, AL 35805-5707

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

**Herc Rentals Inc.
212 Lime Quarry Rd
Madison, AL 35758

**Internal Revenue Service
Attn: Bankruptcy Department
801 Tom Martin Road, Room 126
Birmingham, AL 35211

Sprint Corp.
Attn Bankruptcy Dept
PO Box 7949
Overland Park KS 66207-0949

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Caterpillar Financial Services Corporation
2120 West End Avenue
Nashville, TN 37203-5341

End of Label Matrix
Mailable recipients    39
Bypassed recipients     1
Total                  40